UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-20026-CR-MOORE/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FAUSTO AGUERO ALVERADO,

    Defendant.

_____

**ORDER ON MOTION TO PRECLUDE/LIMIT PUBLIC AUTHORITY DEFENSE**

This matter is before the Court on the government's Motion to Preclude or Limit Public Authority Defense. [D.E. 100]. Defendant Fausto Aguero Alvarado filed his response in opposition [D.E. 112], to which the government replied [D.E. 113]. For the reasons that follow, the motion will be Granted in part and otherwise Denied.

### *I. BACKGROUND*

On January 7, 2011, the Government indicted Defendant for his participation in a drug and gun smuggling conspiracy. [D.E. 1]. On June 12, 2012, Defendant filed a Notice of Intent to Rely on Public Authority Defense. [D.E. 44]. Based on this defense, Defendant asserts that he acted under the authority of the government at all times relevant to the Indictment and, as a result, he is innocent of (or immune from prosecution for) this alleged conspiracy.

On June 29, 2012, Defendant filed a motion for specific *Brady* and discovery evidence regarding the public authority defense [D.E. 52] and requested a hearing [D.E. 56]. On July 19, 2012, the Court denied Defendant's initial *Brady* request as moot based upon the Government's representation of the imminent production of the requested *Brady* material. [D.E. 59]. The Court denied Defendant's motion *without prejudice* in the event that judicial intervention was required at a later date. *Id.*

On July 12, 2012, Defendant filed a second *Brady* motion seeking additional materials relating to his public authority defense. [D.E. 57].[1] In response, the Government again argued that the motion should be denied because it is aware of and has either fully complied with, or is in the process of complying with, its discovery obligations. On August 6, 2012, the Court again denied Defendant's motion based on the Government's representation that disclosure of all relevant *Brady* material was forthcoming. Again, the Court denied the motion *without prejudice* allowing Defendant to re-file his motion in the event judicial intervention becomes necessary. [D.E. 63].

Thereafter, the Government provided Defendant with documents and evidence confirming that at times between 2000 and 2010, the Defendant had in fact worked as an informant for the Drug Enforcement Agency ("DEA") in Central and South America. [D.E. 80 at 1].

Based on these disclosures and additional information, Defendant argues that it intends to introduce testimony, including through an expert witness, that Defendant

---

[1] Specifically, Defendant titled the motion as a "Motion for Government to Provide a Full and Complete Response to Notice of Intent to Rely on Public Authority Defense Pursuant to Fed. R. Crim. P. 12.3."

has been working with agents from the Department of Justice, specifically the DEA, since sometime after 2001. That work included facilitating the identification and building a case against a terrorist who was subsequently arrested, extradited to the United States, convicted and sentenced to prison. As late as 2008, Defendant identified targets of interest to agents from the DEA and gathered information about those targets. As a result of that work, he was debriefed by agents from DEA in Central America and "signed-up" as a DEA informant. Some of the targets he worked were indicted in a separate indictment filed in the District of Columbia, and others who were charged in this indictment (e.g. Franklin William McField-Bent a/k/a Buda).

Defendant further asserts that no one from the DEA ever told him to stop working these targets, that there is no evidence to demonstrate that he received any "cease and desist" order or that his "deactivation" was ever communicated to him, or that Defendant ever knew he was "blackballed" or that his name was released as a person of no confidence. As a result, Defendant seeks to present a defense that, in multiple ways, shows that he acted only in conjunction with the authority given to him by his DEA handlers, or that (based on his understanding of his role with the DEA) at least he never had the criminal intent necessary to find him guilty of the drug trafficking crimes he has been charged with here.

The government, however, filed the pending motion to exclude this evidence because Defendant has not met his burden to advance any form of a public authority defense. Instead of pointing to any specific communication that he alleges authorized his otherwise criminal conduct, the government argues that Defendant can point to no such communication with regard to his approximately eighteen-month long conspiracy

that is at issue in this case. This conduct included at least four in-person meetings, dozens of phone calls, and multiple wire transfers during the conspiracy, at a time when he was not in active communication with any DEA handler. Furthermore, the government points out that Defendant does not rely on any communication that authorizes his participation in any of this conduct, let alone all of this conduct.

The government further concludes that Defendant cannot be permitted, contrary to law, to slip in such evidence to further an improper public authority defense under the guise of an "innocent intent" defense. The government concedes that its motion is not seeking to preclude Defendant from showing the existence of a prior relationship with government agents and arguing that this prior relationship deprived him of the requisite criminal intent to enter into the charged conspiracy. But the availability of this line of defense does not require – nor should it require – the Court to allow a defendant to put details of his earlier activity into the record. The government thus argues that allowing the Defendant to explore the minutiae of his prior work with federal agencies would be improper under Rule 403 because that would confuse the issues and mislead the jury. Accordingly, for all these reasons, Defendant should be precluded from calling various DEA agents and introducing otherwise irrelevant evidence that purports to support a public authority defense, without meeting his burden under the applicable case law.

## II.  ANALYSIS

The pending Rule 12 motion seeks to preclude or limit Defendant's ability at trial to present evidence in support of his "public authority" defenses.  If, in fact, a defendant seeks to introduce a defense that is legally insufficient or being introduced for an improper purpose, a motion in limine to exclude such a defense may properly be granted.  *See, e.g., United States v. Funches,* 135 F.3d 1405, 1408-09 (11th Cir. 1998); *United States v. Moss,* 297 F. App'x 839, 841 (11th Cir. 2008).

The Eleventh Circuit has recognized three related, but distinct, forms of a "public authority" defense.  *See United States v. Baptista-Rodriguez,* 17 F.3d 1354, 1368 n.18 (11th Cir. 1994).  Under the affirmative defense of actual public authority, a defendant contends that he reasonably relied on the authority of a government official to engage him in a covert activity.  The validity of the defense depends on whether the government agent in fact had the authority to empower the defendant to perform the acts in question; if not, then the defendant may not raise this defense. *Id.*

The affirmative defense of entrapment by estoppel differs slightly.  Under this defense, the defendant contends that a government official told him that certain conduct was legal and he committed what would otherwise be a crime in reasonable reliance on the official's representation. *Id.*; *see, e.g., United States v. Strahan,* 565 F.3d 1047, 1051 (7th Cir. 2009) ("the public authority defense requires reasonable reliance by a defendant on a public official's directive to engage in behavior that the defendant knows to be illegal.  In contrast, a defendant who believed his conduct legal because of an official's statement of the law may assert an entrapment-by-estoppel defense.").

Finally, the third iteration of this defense is not an affirmative defense, but instead represents a straightforward defense strategy of innocent intent, in which the defendant contends that he lacked criminal intent because he honestly believed that he was performing otherwise-criminal acts in cooperation with the government. *Baptista-Rodriguez,* 17 F.3d at 1368 n.18.

With respect to the affirmative defenses – public authority and entrapment by estoppel – the defendant's belief that he is cooperating with the government must be reasonable. *Id.*; *see, e.g., United States v. Anderson,* 872 F.2d 1508, 1516 n.11 (11th Cir. 1989); *United States v. Juan,* 776 F.2d 256, 258 (11th Cir. 1985); *United States v. Lopez-Lima,* 738 F. Supp. 1404, 1408, 1413-14 (S.D. Fla. 1990); *see also Funches,* 135 F.2d at 1407 ("To assert this [estoppel] defense successfully, a defendant must actually rely on a point of law misrepresented by an official of the state; and such reliance must be objectively reasonable – given the identity of the official, the point of law represented, and the substance of the misrepresentation.").

Applying these principles to the proffer Defendant has presented in this case, the government's argument is well-taken that Defendant cannot present these defenses at trial because he has not proffered any evidence of an affirmative communication of any type from a federal law enforcement official.  The weight of authority in this and other Circuits clearly shows that an affirmative statement or representation is an essential element of these affirmative defenses. *See, e.g., United States v. Merrill,* 685 F.3d 1002, 1012 (11th Cir. 2012) (affirming exclusion of evidence where defendant never alleged that he knew about or relied on any specific government approval when

he committed his crimes); *United States v. Isley,* 369 F. App'x 80, 89 (11th Cir. 2010) ("This defense is not available unless a defendant can show that she relied upon an official government communication before acting in a manner proscribed by law."); *United States v. Johnson,* 139 F.2d 1359, 1365 (11th Cir. 1998) (upholding exclusion of proffered defenses at trial absent showing of reliance on specific official government communications before acting in a manner proscribed by law); *Funches,* 135 F.3d at 1407 ("The defense of entrapment-by-estoppel, when asserted as a defense to a federal crime, requires reliance on a misstatement by an official or agent of the federal government."); *United States v. Hedges,* 912 F.2d 1397, 1405 (11th Cir.1990) (estoppel defense applies "when an official tells a defendant that certain conduct is legal and the defendant believes that official."); *United States v. Cardeon,* 898 F. Supp. 1563, 1573-75 (S.D. Fla. 1995) (excluding before trial public authority defense where defendants' "claimed reliance is not based on *actual communications* from government officials. Rather, it is predicated on the defendants' claimed interpretation, as articulated by their expert witnesses, of the government's role . . . .") (emphasis added).

And that is not just any law enforcement official; the misstatement or representation must be from a United States government agent. *See, e.g., Funches,* 135 F.3d at 1407; *United States v. Lemons,* 2012 WL 1662035, at *2 (6th Cir. May 14, 2012) (" the defense of estoppel by entrapment is unavailable when a state or local law enforcement official tells a defendant that an act is legal, and the federal government prosecutes the crime."); *United States v. Baker,* 438 F.3d 749, 754 (7th Cir. 2006) ("[W]e note local law enforcement officials ... generally do not have the authority to exempt

individuals from violations of federal firearm laws."); *United States v. Gutierrez–Gonzalez,* 184 F.3d 1160, 1167 (10th Cir.1999) ("[W]e hold that the defense of entrapment by estoppel requires that the 'government agent' be a government official or agency responsible for interpreting, administering, or enforcing the law defining the offense."); *United States v. Spires,* 79 F.3d 464, 466-67 (5th Cir. 1996) ("To satisfy the requirements of the defense when charged with a federal crime, a defendant is required to show reliance either on a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government who has been granted the authority from the federal government to render such advice.").

In this case, none of the information proffered to the Court at the hearing held on the motion, nor contained in any in camera materials reviewed by the Court, evidence any direct or implied affirmative representation sufficient to establish the defenses of public authority or estoppel. That certainly is fatal to the specific requirements of either affirmative defense, as Judge Highsmith found for instance in *Cardoen*. In that case, the defendants were arguing that the defenses were viable even without an actual communication from a federal agent, because the circumstances involved allow them to interpret and surmise from the government's actions and inactions that they were authorized to engage in the illegal transactions charged in the indictment. 898 F. Supp. at 1577. The Court rejected that theory, however, because "[s]uch an approach would attenuate the reliance prong of the actual authority defense to the point of effective abolition." *Id.*

Defendant here also focuses on his own state of mind as the lynchpin of these defenses, arguing in fact that his reliance need not be reasonable. [D.E. 112 at 2]. Defendant points to *United States v. Grajales,* 450 F. App'x 893 (11th Cir. 2012), for the proposition that a defendant only needs to show he reasonably relied on the authority of the government official to authorize the conduct – as opposed to the authority to engage in the conduct itself – in order to qualify for the defense. Upon analyzing that decision, however, we agree with the government that this is a flawed interpretation of that case.

*Grajales* was addressing an innocent intent defense – the third iteration of the related defenses recognized in *Baptista-Rodriguez*. Nothing in *Grajales* alters or undermines the Circuit's other decisions as to the necessary showing required in order to advance public authority or estoppel defenses. *See id.* at 901. To the contrary, the rationale of the decision supports the opposite proposition: "when the district court imposed the requirement that Grajales's belief be reasonable, the district court confused the standards applicable to the innocent intent and public authority defenses." *Id.* It thus follows that, while the "innocent intent" defense does not require proof that a defendant's belief in the authorization to commit the crime be reasonable, the public authority defense *does* require such proof. *See also Anderson,* 872 F.2d at 1513 ("The actual authority defense requires proof that a defendant reasonably relied upon the actual authority of a government official to request participation in an illegal activity").

Under the law of this and every other circuit to consider the question, Defendant must prove not only that the person who allegedly provided him with authorization had actual authority to do so, but that Defendant's reliance on a specifically communicated authorization was reasonable under the circumstances. Because Defendant cannot point to any specific authorization provided to him to engage in the multiple meetings, calls, and wire transfers alleged in the indictment, his reliance on his being "handled" by four separate agents is essentially claiming "blanket authority" to commit the criminal conduct charged. That blanket authority theory is not viable as it is not reasonably reliable under the law. *See, e.g., United States v. Berg,* 643 F. Supp. 1472, 1480 (E.D.N.Y. 1986) ("The proposition that a defendant may commit a criminal act without prior notice to any Government official on the basis of a supposed carte blanche authorization or a license to do everything but kill is without precedent and stretches any concept of good faith reliance beyond recognition.") (cited in *Lopez-Lima,* 738 F. Supp. at 1412); *United States v. Benning,* 248 F.3d 772, 775 (8th Cir. 2001) ("The defense of entrapment by estoppel only applies 'when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct.'") (quoting *United States v. Achter,* 52 F.3d 753, 755 (8th Cir. 1995)); *United States v. Trevino–Martinez,* 86 F.3d 65, 69 (5th Cir. 1996) ("In order for his reliance to be reasonable, the defendant must establish that 'a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'") (quoting *United States v. Brebner,* 951 F.2d 1017, 1024 (9th Cir. 1991)).

Defendant's blanket authority theory is indeed undermined by comparing his claim with those few examples where a public authority or estoppel theory was actually recognized. For instance, in *United States v. Thompson,* 25 F.3d 1558, 1565 (11th Cir. 1994), the Eleventh Circuit found that a defendant's proffer was reasonably sufficient where he testified that he had been sent by federal law enforcement officers to a pawn shop where he pawned various firearms, he had been hired by various government officials to "get" some drug dealers, that when he brought guns to the pawn shop he was doing what he was told to do by the agents, and specifically that a particular FBI agent even gave him a gun and expressly told him to "protect himself" because the people being investigated were dangerous. Though questionable, the Court found this testimony specific and reliable enough to permit the jury to consider the affirmatie defenses at trial.

Nothing like this has been presented in this case. Defendant instead argues that he fully "thought" he was acting in his capacity of informant or operative based upon his earlier meetings with agents, the forms he signed, the communications he had, the money he was rewarded with and the fact that his prior work led to arrests. In other words, Defendant claims that he was under this impression and had no reason to think otherwise because he never knew that he was de-authorized to serve as an informant. But even if we assume that these contentions are true for purposes of this motion, they would not be sufficient to establish a public authority or estoppel defense where he does not allege that the particular drug transactions at issue in this indictment were the *direct result* of those communications. His own version of the

events ultimately undermines the proper application of these affirmative defenses in this case.

Having said that, however, we cannot grant the pending motion in its entirety. That is because the innocent intent defense may, *may*, be viable given this proffer. That defense only requires that a defendant show that he lacked criminal intent because he honestly believed that he was performing otherwise-criminal acts in cooperation with the government. *See Baptista-Rodriguez,* 17 F.3d at 1368 n.18. The affirmative communication and reasonable reliance elements are missing, as the Court reiterated in *Grajales*, 450 F. App'x at 901 ("The defense of 'innocent intent' is a subjective test, requiring an honestly held belief.").

Our review of the record in the light most favorable to Defendant shows that a reasonable juror could conclude that his subjective testimony could be legitimate, especially if the government lacks evidence that its de-authorization of him as an informant was ever clearly and properly communicated to him. And if the jury credits Defendant's testimony that he was always under the impression that his informant duties had never expired or been terminated, the jury could conclude that Defendant, mistaken as he may have been, lacked the necessary mens rea to commit the crimes charged in this indictment. Again, that may be doubtful, but it is not impossible.

And because the innocent intent defense is viable, Defendant may be able to introduce evidence related to that defense at trial even though there may be overlap between that defense and the evidence required for the affirmative authority or estoppel defenses. As a result, we cannot exclude any specific evidence (other than the

expert testimony that Defendant requests) from the trial on the cold record presented. Those determinations are better left for the trial judge to consider during the course of the trial. We should not parse through that evidence now to isolate those pieces of evidence that are solely related to the affirmative defenses (which may be precluded) as opposed to the innocent intent defense (which may be allowed). For now, it is sufficient to find that the motion in limine seeking wholesale or blanket exclusion of any of this evidence should be Denied at this juncture.

### III.  CONCLUSION

For the foregoing reasons, the government's Motion to Preclude or Limit Public Authority Defense. [D.E. 100] is **GRANTED in part and DENIED in part**.[2]

**DONE AND ORDERED** in Chambers at Miami, Florida this 15th day of April, 2013.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[2] To the extent dispositive relief is being entered herein, those aspects of the Order should be deemed a Report and Recommendation under Local Rule 4(a) and Fed.R.Crim.P. 59. The Court finds good cause to expedite any objections with the District Judge to any aspect of this Order/Report and Recommendation, which shall be filed no later than April 17, 2013. Failure to file timely objections waives a party's right to review before the District Judge, and bars the parties from attacking on appeal any legal rulings and factual findings contained herein. *See* Fed. R. Crim. P. 59(b)(1), (2); *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Lewis,* 492 F.3d 1219, 1222 (11th Cir. 2007) (en banc).